announced that although you only see two of us here, this is a three-judge panel. Judge Silverman was unable to make the trip here from Phoenix due to late arising circumstances, but he is with us by conference call and will be participating in the argument as well as in our post-argument conference. We have the following cases on today's calendar submitted on the briefs, and I'll just read them for the record. Zamora v. Barnhart, Conner v. Barnhart, and Kalama Services v. the Director of the OWCP. So the first case for argument is Nake Singh v. Ashcroft. Ready to proceed? Yes, Your Honor. May I reserve two minutes for rebuttal? Fine. Thank you. Watch that timer in front of you, all right? I will. May it please the Court, my name is Amos Lawrence, and I represent the petitioner of this case, Nit Nake Singh, who is appealing the BIA's denial of his applications for political asylum and withholding of deportation on the basis of an adverse credibility finding. This case was originally considered by the BIA in 1995 after the original immigration judge in this case determined that the beatings that my client sustained in custody did not constitute persecution on account of political opinion, and the BIA disagreed at that time with the immigration judge and held instead that the beatings did constitute persecution. It remanded the case back to the immigration for consideration of two issues. One was whether the presumptions to which my client was entitled as a victim of past persecution were overcome by evidence of current country conditions, and the second was in the absence of an adverse credibility finding or a favorable credibility finding, the BIA asked the immigration judge to remand to additionally make a credibility finding, acknowledging specifically that there appeared to be no corroborating evidence concerning his activities or the harm he suffered, and that some of his knowledge about what Khalistan meant seemed to be somewhat vague. On remand, my case was before a different immigration judge because the original immigration judge had retired by that time. In advance of my client's hearing on these issues, he did in fact submit corroborating evidence, one being a birth certificate which verified his identity and that he was in fact from the state of Punjab in India. And the second was a letter from the All Indian Student Sikh Federation which corroborated three important details. One, that he was a member of that organization. The second was that in 1989 he was arrested and physically abused and released after two days, and that he was subsequently pursued by the Indian police for a period of 1989 to 1992 when he departed, and that he departed after the death of his two friends. In contrast, the service introduced no new evidence concerning country conditions, and the judge did not consider that issue, although it had been remanded for that reason. Instead, the IJ on remand denied my case on the basis of adverse credibility finding. Concerning the specific factors applied upon by the IJ in this decision, I would like to amplify a few specific points rather than just repeat the arguments I've made concerning each of these factors in a brief. The first point concerns the perceived deficiency in corroborating evidence. In seat of the INS at 220 Fed Third, 1085, a case we cited in our briefs, this court in pertinent part acknowledged that corroborating evidence from abroad is almost always impossible to obtain, and furthermore that if some corroborating evidence is provided, the adverse credibility finding cannot be based on the applicant's failure to obtain additional corroborating evidence. In this case, my client submitted corroborating evidence from the Federation, corroborating his arrest and the problems he had. The judge faulted him for not finding additional corroborating evidence from the doctor, yet he explained that he asked his mother for that and it wasn't forthcoming. On the basis of the record, this was not an acceptable factor for finding my client was not worthy of belief. Concerning my client's purported failure to testify in more detail concerning the meaning of the term Calistan and its activities as a member of the Sikh Federation, this court acknowledged in Agualera Cota v. INS at 914 Fed Second, 1375, that adverse credibility finding cannot be sustained on the basis of an IJ's finding that the applicant's testimony was in some respects vague. The IJ in this case did not specify what more he would have liked to have heard concerning what Calistan meant. My client was not asked to testify and remand concerning his activities in support of his organization, and the decision is overall unclear as to in what way my client's failure to testify in more detail was deficient. Well, the IJ's questioning of the petitioner on that issue was pretty quite extensive, wasn't it? Well, he did question concerning the meaning of a Calistan, which my client repeatedly stated on both his original hearing and a subsequent hearing, that it signified a separate Sikh state where they could live as Sikhs under their principles. The IJ found that that was somewhat vague, or I don't know. I don't remember his exact terms in terms of how he found that inadequate. It's a kind of a confusing answer, wasn't it? It was kind of, I wouldn't call it gibberish, but it was pretty confusing. At one point he called Calistan a religion. Yes, and as we pointed out in our brief, they do refer to it as the Calistan state, which we maintain is synonymous with the Sikh state or a place where they can live in accordance with the principles of their religion. Right, but I think in all fairness to the IJ, that's the most troublesome part of the transcript, is that he seems to confuse Calistan, the religion, Calistan, the political movement. He can only name four out of the five Ks. Yes. How do you deal with that in terms of the deference that we owe, the credibility finding to the IJ on such matters? I think in two ways. One is I think the IJ gets well established and the deference that's accorded to the IJ is less when it's not a demeanor finding. Secondarily, we have to balance two things. Admittedly, my client mumbles. He's a little incoherent. He doesn't always seem to understand the questions. But you're basically balancing the likelihood that my client will be killed if returned to India against the deficiencies in his testimony in terms of whether he should be subjected to that risk. Well, no, I don't think that's the question. The question is, I mean, is he credible so that the risk should be given credence? You don't balance it until you find it actually exists. I might not have articulated my point too much. What I'm saying is in our position that Fayard, a member of the 5th K, may be interchangeably using the word Talestan for religion and state, while not perfect, are not such substantial errors that this person should be subjected to the likelihood of being killed if he's telling the truth. These clients who come, or these applicants who come before the immigration court, are obviously under a great deal of pressure. They're not sophisticated, and there are imperfections in their testimony. It wasn't very hard questioning. I mean, it wasn't, you're talking about matters of religious faith, and the I.J. was simply probing to see whether or not he understood the faith and so forth. Now, he didn't follow up on the 5th Ks, but it seemed to give him quite a bit of time to come up with something. Yes, but I will point out that my client's claim to asylum is based on his membership and activities in part of a political movement. It's not based on his identity as a Sikh, and it could very well be that as a Sikh his knowledges are deficient. It could be that he doesn't follow all the tenets of the Sikh religion, and yet he's maintaining that he advocates a separate Sikh state. Therefore, our position is that whether he warrants political asylum or not should not hinge on whether he knows all the tenets of his religion. Thank you, Your Honor. You're going to reserve the rest of your time. Good morning. May it please the Court. David Dauenheimer on behalf of the Respondent, the Attorney General. The immigration judge's decision in this case was based on numerous inconsistencies and ambiguities that are reflected in the record, and Petitioner's attempts to excuse these shortcomings in the evidence failed to compel the conclusion that he was, in fact, credible. Thus, this Court should deny the petition for review. Petitioner states in his argument to this Court that his testimony before the immigration judge was consistent that he sought that Khalistan was a separate state which the Sikhs in India sought. However, the record, as the Court noted, is far from consistent or clear on that matter. He first states that it's a religion. He then states that it's his party. He then says ambiguously that they want Khalistan from the government. And then when his own attorney asks him, seemingly exasperated, for the last time what is Khalistan, Petitioner says religion. It's not until his attorney leads him down the path to that Petitioner actually states that Khalistan or, excuse me, agrees that Khalistan is a separate state which the Sikhs wish to create, and that's in the record at page 162. During his second hearing, his confusion on that simple matter continues. He claims that all Sikhs supported Khalistan. This is a claim that's clearly rebutted by the Department of State report, which indicates that there are 14 million Sikhs in India, 4 million of which live outside the Punjab area, and that almost no one outside the Punjab area supports the idea of a separate Sikh state. Again, he refers to Khalistan as his religion later on in his proceedings in the second hearing. And those aren't the only inconsistencies or ambiguities that the immigration judge relied upon. He was also inconsistent with regards to the injuries that he allegedly suffered and the medical treatment that he received as a result of those alleged injuries. During his first hearing, he claimed that he was treated for two months and that he had an injury near his eye and that his knee was injured. That's in the record at 155. During his second injury, he's asked, when you saw the doctor, what treatment did you receive? And he states in the record at page 73 that he never went to the doctor. Then he's confronted with his prior testimony that he had stated that he was treated for two months. Then he claims, oh, yes, it was a small doctor that I saw. And he describes different injuries, though. He describes an injury to the top of his head and doesn't mention any injury near his eye. And he's claimed that he's only treated for two or three days, not two months. When asked why he didn't mention that he had had this treatment during his second hearing, his excuse then was that he forgot about it. Not that he was confused with regard to the question as to whether they meant the time that he was actually in the doctor's care or whether it was a licensed physician versus a medical practitioner of some other sort. It was that he just simply forgot. Also, he's confused with regard to the simple principles of his alleged religion. He claims to be a Sikh in a member of the AISSF who supports the idea of a separate Sikh state, And the Department of State report at page 453 indicates that such supporters would be strict adherents to the Sikh teachings and customs. And yet, in his case, he couldn't remember the five Ks of his, the five basic principles of his religion. How do you deal with the letter from the All India Sikh Students Federation? I believe the letter from the AISSF is on its face suspect because it's advocacy on the behalf of the Petitioner. It doesn't state that there's any personal knowledge of the Petitioner, and rather, it explains that it refers to the asylum laws, actually, and says that he should be found to fall within the protections of the asylum laws or, I guess, international treaties. I mean, it refers to him as sincere and dedicated. He used to participate in the agitation rallies in a democratic way. Why do you think that doesn't indicate personal knowledge? It's an affirmative statement of what he did. Yeah. The immigration judge noted that the letter seemed to lack sufficient indicia that it was, that the person had personal knowledge of his. Right. I read that. But I guess, from my perspective, that I mean, the letter is the most powerful corroborating evidence that the Petitioner has. And the IJ's rejection of it in a way that seemed to be disingenuous, I guess I have to say, or at least certainly didn't comport with it, sort of cast doubt on the rest of his credibility findings. Well, I'm just giving my reaction. I understand. And I think it would go back to the immigration judge also has had many of these cases, and perhaps when examining that letter has come to find that those letters are often more advocacy rather than, say, a historical perspective of the particular Petitioner. Yeah. May I ask a question? Yes, Your Honor. Why does its advocacy cast doubt on its authenticity? I mean, in some ways advocacy seems to me to bolster that it is at least genuine, that it is what it purports to be. Why isn't that true? I would argue that it's not an objective review of his case. Why would we expect it to be objective? I mean, if he's a member and they're trying to help him, why would it be anything other than as argumentative as they want to be? I don't see how that casts doubt on its authenticity. I would just argue that it shows that the source of the letter has an agenda which is in alliance with the Petitioner in this particular case. Precisely. I mean, that's my point. However, that agenda isn't necessarily the separate Sikh state, Your Honor. It's finding asylum for this particular Petitioner. And that, I would argue, casts some doubt upon the reliability of that particular piece of corroborating evidence. Well, I've got the floor for a second. Can I ask, I'm not sure I understand what we expect of people who are of a certain religion who are quizzed about the tenets of their faith. It seems to me you could ask questions of Christians or Jews to identify what exactly certain biblical passages mean or to quote certain tenets. And for whatever reason, you know, people are of different degrees of observation of the faith. I'm not sure how much significance to attach that, you know, the IJ was able to stump this guy on four of the five days. Or for that matter, what it would have meant if he had memorized all five of them. Where do we go with that? Well, I think that his failure to be able to relate those basic principles cast doubt on his sincerity of his claims to be a Sikh and certainly to be a Sikh that is seeking a separate state of Kalestan. As the Department of State report indicated, those individuals would be expected to strictly adhere to the teachings of their religion. And therefore, his failure to know the basic principles was a legitimate basis, albeit only one of the bases relied upon by the immigration judge in finding this particular petitioner to be incredible. I would also like to just point out the petitioner at the start of his argument discussed issues with regard to past persecution and the board's decision. What's before this Court is the credibility determination of the immigration judge. They did not reach the issues as to whether there was a rebuttable presumption of a well-founded fear and whether that presumption was rebutted by evidence in the record. Didn't BIA already decide that, though? The BIA basically said if this constitutes past persecution, you need to know, we need to know from the IJ whether or not he's credible. So if, for example, you were to find reverse the credibility finding, then it doesn't seem to me you revisit the past persecution finding, do you? You may not revisit the past persecution finding. However, the past persecution leads to a rebuttable presumption of a well-founded fear. And that issue was not explored by the immigration judge because he found the petitioner to be incredible. And so this Court would have to remand under Ventura. However, the numerous inconsistencies and ambiguities that the immigration judge relied upon in this particular case support his adverse credibility decision, and certainly the arguments on appeal do not compel a conclusion contrary to that decision. Thank you, Your Honor. All right. Thank you, Mr. Dahnmeyer. Rebuttal? Just one comment, Your Honors. This Court has consistently found that the lack of corroborating evidence cannot be a basis for an adverse credibility finding. However, you can require corroborating evidence where there are other reasons to doubt the applicant's credibility. And I think this is an important point because you have a case where there are some deficiencies, some defects, and it's testimony that the Court has acknowledged and which we acknowledge. And in accordance with established precedent, our client presented corroborating evidence to help resolve that question. In other words, the ambiguities are resolved in his favor if that letter is to be believed. And nobody from the government seems to believe it. The government's attorney says something very revealing. It seems that the I.J. maybe has seen this kind of letter before. I think that's the undercurrent of this case. They doubt immigration asylum claims from India from Sikhs. This case was one in which normally you would have granted asylum in the first case because the original I.J. gave no indication he doubted his credibility but discussed the case and the merits. But the BIA sent the case back and said, why don't you explore this a little bit more? My client submitted corroborating evidence. The service doesn't dispute that. And he dismisses it as if it seems sort of manufactured. That's speculation. My client deserves the benefit of doubt. He should be granted asylum. Thank you. All right. Thank you. We thank both counsel. This case is submitted for decision. Our next case on the argument calendar is Lion Raisins, Inc., versus the U.S. Department of Agriculture.
judges: Tashima, Thomas, Silverman